# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2535

_____

| | | |
|---|---|---|
| In re: Jeffrey Stephen Weihs, | * | |
| | * | |
| Debtor, | * | |
| ------------------------ | * | |
| | * | |
| Robert W. Kortus; Karen Bernice | * | |
| (Weihs) Kenkel, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Jeffrey Stephen Weihs, | * | |
| | * | [UNPUBLISHED] |
| Appellee. | * | |

_____

Submitted: December 7, 2000
Filed: January 10, 2001

_____

Before RICHARD S. ARNOLD, HANSEN, and BYE, Circuit Judges.

_____

PER CURIAM.

Under a Nebraska dissolution decree, Jeffrey Stephen Weihs was ordered to pay Karen Bernice Kenkel alimony of $425 per month for five years. Shortly thereafter, Weihs initiated Chapter 7 bankruptcy proceedings, Kenkel initiated state court contempt proceedings against Weihs for nonpayment of alimony, and Weihs filed the

instant adversary proceedings seeking the bankruptcy court's determination as to (1) whether the alimony was dischargeable as not actually in the nature of support, and (2) whether Kenkel and her attorney, Robert W. Kortus, should be cited in contempt for violation of the automatic stay provisions of 11 U.S.C. § 362. The bankruptcy court ultimately found the obligation under the dissolution decree dischargeable under 11 U.S.C. §§ 523(a)(5) and (a)(15), and assessed sanctions against Kortus in the amount of $1,670, representing attorney's fees incurred by Weihs in defending the state court contempt action. The district court affirmed, and Kenkel and Kortus appeal. We affirm in part, and reverse in part.

Initially, contrary to Kenkel's argument on appeal, we conclude that neither the state court's original dissolution decree nor its contempt order barred relitigation of the dischargeability issue. Bankruptcy courts give deference to but are not bound by a divorce decree's characterization of an award as maintenance or a property settlement, and on the record before us it is not clear what, if any, validity the contempt order has. See In re Sorah, 163 F.3d 397, 403 (6th Cir. 1998) (deference bankruptcy courts owe state divorce courts is not based upon res judicata principles); Franklin Sav. Ass'n v. Office of Thrift Supervision, 31 F.3d 1020, 1022 (10th Cir. 1994) (any action taken in violation of automatic stay is void); In re Williams, 703 F.2d 1055, 1056 (8th Cir. 1983) (whether debt is support obligation or part of property settlement is question of federal bankruptcy law, not state law); see also In re Miera, 926 F.2d 741, 743 (8th Cir. 1991) (party asserting collateral estoppel has burden of proof; to determine whether issue was actually litigated and was necessary to decision in prior action, court should examine entire record of earlier proceeding).

Turning to the question of dischargeability within the meaning of section 523(a)(5), we conclude the bankruptcy court's factual findings were clearly erroneous. See In re Kline, 65 F.3d 749, 750 (8th Cir. 1995) (standard of review). Section 523(a)(5) prohibits the discharge of a debtor's obligation to make alimony, maintenance, or support payments to his or her former spouse. Although the

bankruptcy court was not bound by the divorce decree's characterization of Weihs's debt to Kenkel as alimony, the bankruptcy court was not entitled to ignore this label. See In re Sorah, 163 F.3d at 401 (holding state court's award of alimony is entitled to deference when labeled and structured as such, and finding bankruptcy court's independent analysis failed to give proper deference to decree).

Under Nebraska law, courts ordering payment of alimony must consider the circumstances of the parties, the duration of the marriage, the history of the contributions to the marriage by each party, including contributions to the care and education of the children and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment. See Neb. Rev. Stat. § 42-365 (1998). Here, many of the factors tended to establish the obligation was intended as support. The state court expressly designated the obligation as alimony, and although the court indicated both parties were "capable" of supporting themselves, the court did not indicate both were self-supporting at the time of the decree. Also, while the decree provided that the obligation did not terminate upon Kenkel's remarriage, it was modifiable under Nebraska law, was limited to five years, and terminated upon Kenkel's death, all of which are indicative of support. See Neb. Rev. Stat. § 42-365 (1998); In re Sampson, 997 F.2d 717, 723-24 (10th Cir. 1993) (holding fact that debtor's obligation to his former wife would survive her remarriage was countered by its termination upon her death, which is consistent with support obligation; debt's non-termination upon remarriage is insufficient to overcome clear expression that obligation was for support); Murrell v. Murrell, 440 N.W.2d 237, 241 (Neb. 1989) (alimony is intended to assist party during reasonable period of time to bridge period of unavailability of employment or to obtain proper training for employment). Because we conclude the finding that the alimony award was not actually in the nature of alimony was clearly erroneous, section 523(a)(15)--which applies to debts incurred in the course of a divorce "not of the kind described in paragraph (5)"--is inapplicable.

Turning to the issue of sanctions, although Kortus was entitled to pursue alimony on behalf of Kenkel from Weihs's post-petition wages, see 11 U.S.C. § 362(b)(2)(B) (automatic stay does not prohibit collection of alimony from property that is not property of bankruptcy estate), he was not entitled to file a contempt action against Weihs personally. We therefore find no abuse of discretion in the imposition of the sanctions. See Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir.), cert. denied, 510 U.S. 828 (1993) (standard of review).

Accordingly, we affirm the imposition of sanctions against Kortus, and we reverse the determination that the debt to Kenkel was not alimony within the meaning of section 523(a).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.